FILED
CLERK

1:18 pm, Jun 26, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
SHERAZ KHALID, SURESH PATEL and
MOHAMMED SALEH, individually and on behalf of
all others similarly situated,

                              Plaintiffs,

          -against-

DJ SHIRLEY 1 INC., d/b/a Dunkin'Donuts, DJ
HOLBROOK INC., d/b/a Dunkin' Donuts, DJ
SOUTHOLD INC., d/b/a Dunkin' Donuts, SANJAY JAIN,
NEERJA JAIN, and JOHN DOE CORPS. #1-13,
jointly and severally,

                             Defendants.
--------------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CV-5926 (SJF) (GRB)

FEUERSTEIN, J.[1]

       Plaintiffs commenced this action pursuant to the Fair Labor Standards Act ("FLSA"),

29 U.S.C. §201 *et seq.* and New York Labor Law ("NYLL") seeking to recover *inter alia* unpaid

overtime wages and spread of hours pay from Defendants, their former employers.  Currently

before the Court are two motions submitted by Plaintiffs:  a motion for class certification of the

NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure, Docket Entry ("DE")

[64]; and a motion for partial summary judgment.  DE [68].  For the reasons set forth below,

both motions are granted in part and denied in part.

---

[1]This matter was re-assigned from District Judge Leonard D. Wexler on April 9, 2018.

## I. BACKGROUND

### A. Relevant Facts[2]

#### 1. The Parties

The corporate Defendants, DJ Shirley 1, Inc. (" DJ Shirley 1"), DJ Holbrook Inc. ("DJ Holbrook"), and DJ Southold Inc. ("DJ Southold") (collectively, the "corporate Defendants") are entities owning and operating Dunkin' Donuts franchises in Shirley,[3] Holbrook, and Southold, New York.  The corporate Defendants are owned by the individual Defendants Sanjay Jain ("Sanjay J.") and Neerja Jain ("Neerja J.") (collectively, the "individual Defendants").  Sanjay J. is the Chief Executive Officer or Chief Financial Officer of the corporate Defendants, and Neerja J. is their President.  Pls.' 56.1 Stmt ¶1.  The individual Defendants are also the principals of approximately thirteen additional entities that control a like number of franchises throughout Nassau, Suffolk, and Queens Counties.  All bookkeeping is performed at a central office in Shirley.  Defs.' 56.1 Stmt ¶3.

Plaintiffs are former employees at Dunkin' Donuts locations owned and operated by Defendants.   Plaintiff Sheraz Khalid ("Khalid") worked at the Shirley 1 location from December 2013 until September 2015.  Defs.' 56.1 Stmt ¶9.  He started work as a cashier, and was promoted to shift leader.  *Id.*  ¶¶9-10.  From June 2014 through the end of his employment, Khalid testified that his work schedule was 2:00 p.m. to 12:00 a.m.  Pls.' 56.1 Stmt ¶58.

Plaintiff Suresh Patel ("Patel") was also employed at the Shirley 1 location beginning in September 2014 until his termination on or about January 24, 2016.  Defs.' 56.1 Stmt ¶11.  He

---

[2] The facts are drawn from Plaintiffs' Local Rule 56.1 Statement of Material Facts ("Pls.' 56.1 Stmt"), DE [70], and Defendants' Rule 56.1 Statement ("Defs.' 56.1 Stmt"), DE [77], and are undisputed unless otherwise noted.  Where indicated, facts are also drawn from evidence presented on the motions.

[3] Defendants appear to operate more than one franchise in Shirley; the parties refer to this location as "Shirley 1."  To avoid confusion, the Court follows this naming convention.

estimates that he worked ten hours per day, seven days per week.  Pls.' 56.1 Stmt ¶74.

Defendants do not have any records of hours worked by Patel under that name.  *Id.* ¶76.  Patel

has testified that he received paychecks made out to both "Doleen Carbon" and "Ashraf Shazia,"

*see* Patel Deposition, at 33, Declaration of Matthew J. Mehnert in Opposition to Motion for Class

Certification ("Mehnert Class Cert. Decl."), Ex.F, DE [75-6], and Defendants note that there are

time records for Doleen Carbon that represent the hours Patel claims to have worked.  Resp. to

Pls.' 56.1 Stmt ¶¶73- 76.

     Plaintiff Mohammed Saleh ("Saleh") was working as a crew member at the Holbrook

store in 2007 or 2008 when that franchise was purchased by Defendants.  Defs.' 56.1 Stmt ¶13.

Saleh was promoted to store manager at that location, worked at the Shirley 1 store for four or

five months in 2011, and then moved to the Southold location where he was the store manager

until the end of his employment in 2013 or 2014.  *Id.*  ¶¶14-17.

     <u>2.  Staffing at the Locations</u>

     Each location had one store manager and a shift leader.  Pls.' 56.1 Stmt ¶24.  Store

managers worked approximately 60 hours per week and in their absence, the shift leader would

oversee the store.  *Id.*  ¶25.  There were times when neither a store manager nor a shift leader

was present at a store.  *Id.*  ¶26.  Other employees included cashiers and bakers.  All the store-

level employees, including store managers, at all the franchises owned by Defendants were paid

on an hourly basis.  Defs.' 56.1 Stmt ¶32.  All employees, with the exception of store managers

and bakers, were required to clock in and out.  *Id.*  ¶25.

     Defendants' method for tracking time worked changed over the relevant time period.

Prior to 2013, a manual punch clock system was used and Paychex processed the payroll.  Pls.'

56.1 Stmt  ¶¶3, 5.  Defendants do not maintain any records regarding the hours worked or wages

paid to workers under this system.  *Id.*  ¶9.   Since 2013, the stores use a computerized Radiant

Point of Sales ("POS") system, and ADP processes the payroll.  *Id.*  ¶¶3, 5-6.

Defendants claim that all employees are required to take meal breaks during their shifts,

that the employees took breaks, and that those breaks lasted from fifteen minutes up to sixty

minutes or more.  Defs.' 56.1 Stmt ¶¶33-34.   Store managers and shift leaders advised

employees at the start of their shift when they would take a break. *Id.*  ¶ 38.  If the store manager

was not present, the shift leader would ensure that breaks were taken.  Pls.' 56.1 Stmt ¶25.

Plaintiffs testified that they were not allowed to take uninterrupted meal breaks, *see id.*  ¶¶53, 65,

78, but Defendants challenge the truthfulness of that testimony.  Defendants state that part-time

employees working fewer than forty hours per week were paid for their meal breaks, but full

time employees who work more than forty hours per week were not paid for non-working time

including breaks.  Defs.' 56.1 Stmt ¶¶ 39-40.

Prior to the institution of this litigation, hourly workers were <u>not</u> required to clock in and

out within their shifts for any breaks taken. Defs.' 56.1 Stmt ¶ 35. Instead, the store managers

were required to keep track of the breaks taken by that store's employees. *Id.*  ¶ 36.

### 3.  Payroll Practices and Calculation of Overtime Pay

Neera J. oversees the payroll process.  Defs.' 56.1 Stmt ¶5.  The same payroll practices

are followed throughout the franchises owned and operated by the individual Defendants.  *Id.*

¶20.  Payroll was run bi-weekly.  *Id.*  ¶ 26.  Every two weeks, the store manager for each store

would print out the POS time records for the employees in that store.  Pls.' 56.1 Stmt ¶17.  Store

managers were unable to correct errors in the POS system such as when an employee forgot to

clock in or out.  *Id.*  ¶19.  In reviewing the POS records, the store managers would make

handwritten notes to correct any errors, and would deduct time taken by the employee for meal

breaks.  Pls.' 56.1 Stmt ¶20; Defs.' 56.1 Stmt ¶ 28.  These handwritten notes were forwarded along with the POS printouts to the central office for entry into the ADP payroll system. Pls.' 56.1 Stmt ¶20.  Neerja J. would review the reports for discrepancies and input the data into the ADP system. Defs.' 56.1 Stmt ¶ 29.  Defendants do not maintain the store managers' handwritten notes beyond one or two pay periods.  Pls.' 56.1 Stmt ¶21.   Other than the store managers' notes, there are no independent records of meal breaks taken.

The wage statements issued bi-weekly do not necessarily reflect the hours worked as set forth on the POS reports. Pls.' 56.1 Stmt ¶34.   Defendants claim in response that the pay statements reflect all hours actually worked, which number does not include unpaid break time. In other words, the number of hours worked on the wage statements is the number of hours on the POS records, minus breaks and corrections noted by the store managers.

Plaintiffs Khalid and Patel allege that they worked in excess of 40 hours per week and were not paid the proper amount of overtime because they were not paid for all hours clocked. Pls.' 56.1 Stmt ¶¶ 56, 75.  They do not allege that they were not paid any overtime, but that time was improperly deducted for meal breaks that they did not take.

There are no POS or other clock-in records for Saleh.  Pls.' 56.1 Stmt ¶¶14, 16. Defendants admit that there are no such records, but state that he was a store manager and was not required to clock in or out for his shifts.  Saleh claims that he was required to clock in and out.  *Id.*  ¶15.

### 4.  Spread of Hours & Wage Notices

Plaintiffs and other hourly workers worked shifts or split-shifts in excess of ten hours. Pls.' 56.1 Stmt ¶43.  Neerja S. admitted that she did not know what "spread of hours is," that workers were paid for the hours worked, and that they were not paid anything extra if they

worked more than ten hours a day.  *Id.*  ¶¶45-48.  Defendants deny that Plaintiffs were entitled to additional payment.  Resp. to Pls.' 56.1 Stmt ¶59.

As to wage notices, Defendants initially admitted that these were not provided to their employees.  Pls.' 56.1 Stmt ¶37.  As will be discussed *infra,* discovery was re-opened on this issue subsequent to completion of the motion briefing.  Defendants now claim that wage notices in the form of Payrate Sheets were provided to all employees.

5.  Work Hours of Other Employees

Plaintiffs offer the deposition testimony of two opt-in plaintiffs regarding their work experiences.  Jonathan Garcia ("Garcia") worked as a cashier/donut maker at the Hampton Bays location from approximately November 2014 to May 2015.  Pls.' 56.1 Stmt ¶79.  He testified he was unable to take uninterrupted meal breaks, *id.* ¶83, and that he was not paid for all the hours he clocked.  *Id.*  ¶85.  Denzel McClees ("McClees") worked at the Westhampton location as a shift manager from approximately May 2014 to June or July 2015.  *Id.*  ¶89.  McClees gave conflicting testimony regarding whether he took meal breaks.  *Id.*  ¶93; Resp. to Pls.' 56.1 Stmt ¶93.

Defendants have submitted sworn affidavits from thirty-one current and former employees at the franchises.[4]  *See* Mehnert Class Cert. Decl., Ex. BB.  The affiants held various positions at the stores.  Six store manager affiants, who worked at five of the locations, all state that they work over forty hours per week and believe they have been paid in full, that meal breaks are required, that they schedule meal breaks for the employees, and that they ensure that the breaks are taken.  *See* Affidavits of Imtiaz Ahmed (Holbrook), Ex. BB-1; Alba Gavin

---

[4] Defendants had also provided deposition testimony from non-parties Ali Ullah, Asaf Shahzad, Samran Shafiq.  Judge Brown granted Plaintiffs' motion to strike this testimony as it was taken outside of the discovery period over Plaintiffs' objections and the witnesses were not subject to cross-examination.  *See* Electronic Order of 3/28/17.  Accordingly, those submissions were not considered by the Court.

(Hampton Bays), Ex. BB-5; Kamber Karadeniz (Westhampton), Ex. BB-6; Fnu Sajid (Shirley 1), Ex. BB-12; Habibur Rehman (Riverhead), Ex. BB-28; Siddikur Rahman (Hampton Bays), Ex. BB-31.  They further state that they review the hours worked by the store's employees, including time for meal breaks, at the end of each week to ensure that the time punches are accurate.  *Id.* Multiple crew members state that they believe they have been paid all overtime owed to them, that they are required to take meal breaks as scheduled by the store manager or shift leader, that they take meal breaks, and that they dispute the claim that co-workers did not take such breaks. *See, e.g.,* Affidavits of Uzma Amar (Holbrook), Ex. BB-2; Kristal Dewey (Riverhead); Ex. BB-15; Serena Guiliano (Shirley 2); Ex. BB-16; Emine Karadeniz (Westhampton), Ex. BB-19; John Rider (Eastport), Ex. BB-22; Brijeshbhai Patel (Southampton), Ex. BB-24; Jessica Vargas (Shirley 1), Ex. BB-30.

### B.  Procedural History

The Amended Complaint, which was filed on consent, asserts seven causes of action: unpaid overtime under both the FLSA and NYLL; unpaid spread of hours premiums under NYLL; failure to provide a wage notice under NYLL; failure to provide a wage statement under NYLL; and retaliation on behalf of Patel under both the FLSA and NYLL.[5]

Plaintiffs moved, with Defendants' consent, for conditional certification of a collective action under the FLSA, and Judge Brown granted that motion on March 29, 2016.  The approved collective class is as follows:

> All current and former hourly employees who worked for any Dunkin' Donuts or combination Donuts/Baskin Robbins/Nathan's location owned and/or operated by Sanjay Jain and/or Neerja Jain in Nassau or Suffolk County at any time between October 14, 2012 and March 29, 2016 who worked more than 40 hours in any given workweek, with the exception of store managers.

---

[5] Patel alleges that he was terminated in retaliation for joining this lawsuit as a named plaintiff in violation of both the FLSA and NYLL.  These claims are not before the Court on these motions.

Order, DE [23].  Approximately eighteen individuals filed a Consents to Join in the collective

action.

Upon the completion of discovery, Plaintiffs submitted the two motions currently before

the Court – a motion for class certification of the NYLL claims pursuant to Rule 23 and a motion

for partial summary judgment.  The only causes of action not addressed by the summary

judgment motion are Patel's retaliation claims.

After the motions were submitted, Defendants were given leave to re-open discovery

regarding the issue of wage notices.  Defendants produced Payrate Sheets which they claim

satisfy the wage notice requirement.  Plaintiffs question the authenticity of those documents.

## II.  CLASS CERTIFICATION

### A.  Legal Standards

Plaintiffs seek certification for their NYLL claims under Rule 23.  They bear the burden

of establishing the four threshold requirements of Rule 23(a):   (1) that the class is so numerous

that joinder of all members is impracticable ("numerosity"); (2) that there are questions of law or

fact common to the class ("commonality"); (3) that the claims or defenses of the representative

party are typical of the claims or defenses of the class ("typicality"), and (4) that the

representative party will fairly and adequately represent the interests of the class ("adequacy of

representation").   FED. R. CIV. P. 23(a)(1)-(4).   Once Plaintiffs have satisfied the requirements

of Rule 23(a), they must establish that their proposed class falls into one of the types of suits

identified in Rule 23(b).  Plaintiffs assert that their proposed class action satisfies Rule 23(b)(3)

which allows certification if the court determines "that the questions of law or fact common to

class members predominate over any questions affecting only individual members, and that a

class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

The court must "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met." *In re Initial Pub. Offerings Secs. Litig.,* 471 F.3d 24, 42 (2d Cir. 2006). In doing so, the Court must "conduct a 'rigorous analysis' that may 'overlap with the merits of the plaintiff's underlying claim.'" *Jacob v. Duane Reade, Inc.,* 602 F. App'x 3, 5 (2d Cir 2015)(summary order) (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 149, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

Plaintiffs seek to certify a class for pursuant to Rule 23. The proposed class is defined as follows:

> All hourly employees who worked in excess of forty (40) hours in any workweek and/or worked a shift or split-shift in excess of ten (10) hours at any time from October 14, 2009 through the present, for any Dunkin' Donuts or combination Dunkin' Donuts/Baskin Robbins/Nathan's location owned and/or operated by Sanjay Jain and/or Neerja Jain in New York.

Notice of Motion, DE [64]. Although the collective action does not include store managers, Plaintiffs argue that the Rule 23 class should include store managers paid on an hourly basis.

**B. Analysis – Rule 23(a) Factors**

Plaintiffs claim that Defendants' common policies or practices of unlawful labor practices were the failure to pay them for all overtime hours worked and the failure to pay spread of hours pay for shifts in excess of ten hours.[6] The Court will examine the Rule 23 requirements as necessary to these claims.

---

[6] The claim regarding the accuracy of wage statements provided to the employees is tied to the unpaid overtime claim. If Plaintiffs are successful on the overtime claim, success on the wage statement claim will likely follow.

### 1.  Numerosity

To satisfy the numerosity requirement, plaintiffs must show that the class is so large in number that joinder of all members is impracticable.  In this Circuit, numerosity is presumed where a putative class has forty or more members.  *See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citing *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995)).  For purposes of the collective action, Defendants provided Plaintiffs with a list of hourly employees in Nassau and Suffolk Counties from approximately October 14, 2012 to March 29, 2016.  The names on this list, which does not include hourly paid store managers, number in excess of one hundred eighty-five (185) putative class members.  Defendants do not address the numerosity requirement in their opposition.  As there is no reason to challenge the numbers provided by Plaintiffs, the Court finds that the requisite numerosity exists.

### 2.  Commonality & Typicality

Commonality is established by showing that the potential class members' "grievances share a common question of law or of fact."  *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).  Typicality "requires that the claims of the class representatives be typical of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Id.* (internal quotation marks and citation omitted).  The requirements of commonality and typicality "tend to merge into one another, so that similar considerations" are analyzed for each.  *Marisol A.*, 126 F.3d at 376; *see also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 n.5, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (acknowledging that the Rule 23(a) requirements of commonality and typicality

"tend to merge").  Indeed, "[t]he crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Marisol A.,* 126 F.3d at 376 (quoting *Falcon*, 457 U.S. at 157, n.13).

The key issue in determining commonality and typicality "is not the raising of common 'questions'" by the potential class members.  *Dukes,* 564 U.S. at 350 (internal quotation marks and citation omitted)).  The appropriate inquiry "is whether a classwide proceeding is capable of 'generat[ing] common answers apt to drive the resolution of the litigation.'" *Jacob*, 602 F. App'x at 6 (quoting *Dukes,* 564 U.S. at 350) (emphasis in original)).   The claims of the class members must "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes,* 564 U.S. at 350.

### a.   Failure to Pay Overtime / Meal Break Deductions

The first step is to determine the common issue that must be answered to resolve the unpaid overtime claims of the putative class.  To certify a company-wide class action, the employees "must show either (i) an express company policy that violated the employee-plaintiffs' rights; or (ii) a practice that had sufficiently pervaded the company that it had become a de facto policy, which the plaintiffs can show by, among other things, anecdotal evidence that reaches a certain critical mass or comprehensive statistical analysis."  *Mendez v. U.S. Nonwovens Corp.,* 312 F.R.D. 81, 92 (E.D.N.Y. 2014) (interpreting *Dukes*).

The crux of the issue is the discrepancy between the hours clocked by Plaintiffs and the lesser number of hours for which they were paid.  Defendants claim that they properly deducted time actually taken by Plaintiffs for meal breaks.  Plaintiffs do not suggest that they were entitled

11

to be paid for such breaks, and indeed, meal break deductions do not violate the NYLL because employees are not entitled to be paid during break periods when they are not working. *See Mendez,* 312 F.R.D. at 99. Instead, Plaintiffs argue that they were not permitted to take meal breaks at all and thus any deductions taken were improper.[7] As such, Plaintiffs are attacking not the express company policy, but rather its implementation, suggesting that there was a *de facto* company policy of docking employees for meal breaks that were not taken. Thus, the question raised is whether Defendants' policy of deducting time for meal breaks systematically deprived the employees of wages for hours worked. The Court finds that the Plaintiffs have not established that this question is a common question of law or fact that would lead to classwide resolution of the claim.

To prove that a *de facto* company-wide policy of improper deductions existed, Plaintiffs must provide evidence that the policy was used in practice to deny employees overtime wages. The mere fact that the meal break policy existed does not raise an inference that implementation of that policy resulted in the denial of wages or overtime pay. Plaintiffs do not claim that Defendants used the policy to automatically deduct a set amount of time for meal breaks from every shift. Even if that were the case, however, a general practice or policy of deducting for meal breaks would not raise an inference that employees were denied overtime. *See, e.g., Mendez,* 312 F.R.D. at 96 ("the fact that the Defendants had a general practice of paying employees based on their shift schedule does not, on its face, raise an inference that the policy resulted in denying . . . workers wages or overtime"); *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.,* 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014) (noting that "automatic meal deduction policies are not *per se* illegal").

---

[7] Plaintiffs assert an alternative argument that Defendants' recordkeeping regarding meal breaks was faulty to the extent it relied upon the recollections and observations of the store managers.

In the absence of evidence of an explicit policy requiring an employee to work off-the-clock or without breaks, plaintiffs must "produce significant anecdotal evidence from which the Court can infer a *de facto* policy." *Mendez,* 312 F.R.D. at 96 (citing *Dukes*, 564 U.S. at 358). Conclusory statements of anecdotal individual violations "lack the kind of precision and detail from which the Court might infer a uniform policy on the part of the Individual Defendants to deny compensation to their employees." *Mendez,* 312 F.R.D. at 97; *see also Fernandez v. Wells Fargo Bank, N.A.,* Nos. 12 Civ. 7193, 12 Civ. 7194, 2013 WL 4540521, at *8 (S.D.N.Y. Aug. 28, 2013) (noting that declarations may "constitute relevant evidence of a policy to require off-the-clock work and to limit overtime.  However, their value as proof of a common policy is limited because of the lack of detail concerning the underlying communications.").  Upon review of the material submitted, the Court finds that Plaintiffs have failed to provide evidence sufficient to support an inference that there was a company-wide policy of improperly deducting meal break time from the employees' hours.

In support of the motion, Plaintiffs have provided an "Hours Log" purporting to summarize the time and pay records for the named and opt-in plaintiffs.  Declaration of Brent E. Pelton in Support of Motion for Class Certification ("Pelton Class Cert. Decl."), Ex. 7 DE [66]. A review of the data set forth in that log fails to support Plaintiffs' claim that there was a systematic reduction in the hours clocked.  The following chart uses data culled from Plaintiffs' submissions and sets forth the total number of pay periods worked by a Plaintiff and the number of those periods for which that Plaintiff claims he or she was not paid overtime.

| Employee | # of Bi-Weekly Pay Periods | # of Pay Periods Alleging Unpaid Overtime |
|---|---|---|
| Sheraz Khalid | 43 | 27 |
| Patel (aka Doleen Carbon) | 10 | 10 |
| Denzel A. McClees | 20 | 4 |
| Justin Grzybowski | 6 | 0 |
| Jessica Nemeth | 25 | 0 |
| Anastasia Melville | 8 | 0 |
| Khalid Ahtezad | 24 | 4 |
| Jonathan Garcia | 11 | 9 |
| Edwards Byrol | 5 | 2 |
| Jade McKrieth | 4 | 0 |
| Frank Dutan | 6 | 0 |
| Harold Cordero | 29 | 1 |

This data does not demonstrate that that there was a systematic deduction that would establish a company-wide policy; indeed, some of these employees were sometimes paid more than the hours clocked.  In addition, this chart shows that many of these employees worked far fewer than 80 hours per pay period and thus were likely part-time employees who would not be part of the putative class.  Therefore, this data does not support an inference that the deductions were made to deny payment of overtime.

Moreover, there are too many variable factors to permit a finding of commonality, *e.g.*, the method each store manager employed to keep track of meal breaks taken at each location. In addition, to establish liability, questions would have to be answered as to each employee, *e.g.*: a) Was the employee allowed to take any meal breaks?  b) If the employee was allowed a meal break, how long did the break last?  c) Did the employee take the same break period every shift? In other words, in absence of a *de facto* or express policy, "resolving the employees' claims would require the Court to conduct individual inquiries for each class member to determine the hours he or she legitimately worked and whether he or she was paid appropriate compensation.

Such individual determinations suggest a lack of commonality and render a class action inappropriate." *Mendez*, 312 F.R.D. at 97.

Plaintiffs have further failed to satisfy the typicality requirement. To do so, plaintiffs must show that their claims are typical of those of the class, and that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson*, 267 F.3d at 155. Defendants' liability hinges in part upon whether the meal break deductions made were accurate, and this determination can only be made on an individualized basis. Plaintiffs' alternative argument regarding the sufficiency of the store managers' recordkeeping is also susceptible to individual proof as to the conduct of each store manager. These are substantive inquiries that must be made as to each employee and his or her store manager. As Plaintiffs have failed to satisfy the commonality and typicality requirements of Rule 23, there can be no class action as to their unpaid overtime claim.[8]

### b. *Spread of Hours Pay*

NYLL requires employers to pay employees an extra hour's pay at the regular minimum wage for each day they work more than ten (10) hours. The question of whether such payments were made here is amenable to resolution in a class action.

Defendants do not claim they had a policy of paying spread of hours wages. To the contrary, Neerja J. testified that she did not know what spread of hours is, and that workers were not paid anything extra if they worked more than ten hours in a day. Neera J. Dep. at 22-23; *see also* Defs.' 56.1 Stmt ¶ 43 (wherein Defendants state that "some hourly employees of Defendants

---

[8]The Court notes that even if it were to find that there was a common policy affecting the employees at all locations, these issues are subject to individualized proof and predominate over issues subject to generalized proof. Accordingly, Plaintiffs are unable to satisfy the predominance requirement of Rule 23(b)(3) as to their overtime claims. In addition to these concerns, there are several employee types within the proposed class that prevent a unified resolution.

worked shifts or split-shifts that exceeded 10 hours a day."). Defendants' admitted failure to pay spread of hours pay raises a common question for any employee who worked shifts of ten or more hours.

The daily time records supplied by Plaintiffs show that those employees worked some shifts or split-shifts in excess of ten hours. *See* Declaration of Brent E. Pelton in Support of Summary Judgment motion ("Pelton SJ Decl."), Exs. 15 & 16, DE [71] (showing shifts in excess of 10 hours for Khalid (17 shifts), Garcia (28 shifts) Ahtezad Khalid (4 shifts), Dutan (2 shifts), Nemeth (2 shifts)). Plaintiffs' spread of hours claims all derive from Defendants' policy of not making those payments and thus a question common to the class is presented. Furthermore, the named Plaintiffs spread of hours claims arise from the same course of events and implicate the same legal arguments. As such, the typicality requirement is also met.

Significantly, spread of hours is defined as "the length of the interval between the beginning and end of an employee's workday," and "includes working time plus time off for meals plus intervals off duty." N.Y. COMP. CODES R. & REGS. tit. 12 § 142-2.18. Thus, the factual discrepancies regarding whether or not meal breaks were taken are immaterial to a determination of spread of hours wages. Finally, the damages questions raised are uncomplicated and should entail only a review of the employees' daily time records. If the Plaintiffs can satisfy the remaining requirements of Rule 23, the Court will certify a class for the spread of hours claims.

3.  Adequate Representation

Plaintiffs must show that as representatives, they "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The requirement of adequacy of representation "is designed to ferret out potential conflicts between representatives and other class members."

*In re Visa Check/Master Money Antitrust Litig.,* 280 F.3d 124, 145 (2d Cir. 2001); *see also*

*Shariar,* 659 F.3d at 253 (plaintiffs provided "adequate representation that the class

representatives are prepared to prosecute fully the action and have no known conflicts with any

class member").   Defendants claim that the named Plaintiffs are not adequate class

representatives due to conflicts of interest and because of issues relating to "honesty and

trustworthiness."

The purported conflicts of interest raised pertain to disputes regarding the meal break

policy and its effect on overtime pay.  For example, Defendants cite conflicting testimony

between Plaintiffs and other potential class members relating to whether or not Plaintiffs ever

took meal breaks.   As certification of that class has been denied, however, Defendants concerns

on this point are no longer relevant.

Defendants further suggest, without citation to case law, that Patel's language skills and

immigration status make him an inadequate class representative.  Plaintiffs have countered with

case support for the proposition that those issues are not dispositive of whether a party is an

adequate class representative. *See Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 344 n.105

(S.D.N.Y. 2004) ("[a] tenuous grasp of the English language is insufficient to render a putative

class representative inadequate");  *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87

(S.D.N.Y. 2001) (finding that "Defendants' concerns regarding the immigration status of the

various named Plaintiffs as bearing on their potential credibility and fitness as class

representatives are without merit").  The Court agrees that these factors do not require a

determination that Patel is not an adequate class representative.

The balance of Defendants' arguments relate to the honesty and character of Plaintiffs.

For example, they claim there is evidence that Khalid helped Patel secure a fraudulent identity;

that Patel has committed fraud, is not authorized to work in the United States, and does not read English; and that Saleh hired family members as "ghost" employees in furtherance of Medicaid fraud.   Defendants do not provide substantiation for these claims, and it is the Court's understanding that several of these claims are the subject of separate litigations between these parties.   In general, the examination of proposed representatives' "personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." *Gortat v. Capala Bros.*, 257 F.R.D. 353, 364 (E.D.N.Y. 2009) (internal quotation marks and citation omitted).   The extent to which the objectionable conduct relates to the lawsuit is the proper inquiry.

Here, the Defendants' allegations regarding Plaintiffs' conduct are largely unsubstantiated or a matter of factual dispute, and are largely tangential to any claim for spread of hours pay.   The Court finds that the named Plaintiffs may adequately represent the class on the spread of hours claim.   Of course, "if, for some reason it is later determined by the court that the representative Plaintiffs are inadequate, the court could substitute another class plaintiff for the representative plaintiff in question or simply allow the remaining representative Plaintiffs to proceed with the class action."   *Shahriar,* 659 F.3d at 253.

Rule 23 (g) governs the appointment of class counsel.   Plaintiffs' counsel has attested to the firm's experience in handling wage and hour cases, *see* Pelton Class Cert. Decl. ¶¶ 2-7, and Defendants do not contest counsel's qualifications or experience.   Defendants' only objection to the adequacy of Plaintiffs' counsel to act as class counsel is a perceived conflict of interest between counsel and other class members.   They argue that counsel would be required to attack the credibility of potential class members who have contradicted Plaintiffs' claim that they did

18

not take meal breaks and thus were entitled to additional overtime pay.  Even if this were a basis

to disqualify counsel, the only certified class is for the spread of hours claim, and the purported

conflict only exists as to the overtime claim.  There is no suggestion of any conflict regarding the

spread of hours claim that would prevent Plaintiffs' counsel from proceeding as class counsel.

The Court finds that Plaintiffs have successfully demonstrated that class counsel is experienced,

qualified and able to conduct this litigation.  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473

(S.D.N.Y. 2013) (internal quotation marks and citations omitted).   Counsel is hereby appointed

class counsel.

**C.  Rule 23(b) Factors**

To qualify for certification under Rule 23(b)(3), the class must meet two additional

requirements:  "[c]ommon questions must 'predominate over any questions affecting only

individual members;' and class resolution must be 'superior to other available methods for the

fair and efficient adjudication of the controversy.'"  *Anchem Prods., Inc. v. Windsor,* 521 U.S.

591, 615, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).   For the reasons set forth below, the Court

finds that Plaintiffs have carried their burden as to the spread of hours class.

1.  Predominance

The Rule 23(b)(3) predominance inquiry tests "whether proposed classes are sufficiently

cohesive to warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo,* -- U.S. --

, 136 S. Ct. 1036, 1045, -- L. Ed.2d -- (2016) (quoting *Anchem Prods.,* 521 U.S. at 623).  The

court must "give careful scrutiny to the relation between common and individual questions in a

case" and determine "whether the common, aggregation-enabling issues in the case are more

prevalent or important than the non-common, aggregation-defeating, individual issues."  *Tyson*

*Foods,* 136 S. Ct. at 1045 (internal quotation marks and citation omitted).

The predominance requirement is satisfied where plaintiffs demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d at 136 (internal quotation marks and citation omitted); *see also In re Am. Int'l Grp., Inc. Secs. Litig. v. Gen. Reinsurance Corp.*, 689 F.3d 229, 240 (2d Cir. 2012) (to meet the predominance requirement, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." (internal quotation marks and citations omitted)). Individualized damages questions alone do not preclude Rule 23 class certification. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015). Even where there are individualized damages issues, "[c]ommon issues may predominate when liability can be determined on a class-wide basis." *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d at 139. Defendants here had a common policy of failing to pay spread of hours wages. The Court finds that this question concerning Defendants' liability predominates over individual questions that may be raised by each Plaintiff.

### 2.  Superiority

Rule 23(b)(3) also provides an nonexhaustive list of individual factors for the court to consider regarding superiority including:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

20

FED. R. CIV. P. 23(b)(3).  Of the four, "manageability is by far the most critical in determining whether a class action is a superior means of adjudication."  *Sykes v. Mel. S. Harris Assocs. LLC,* 780 F.3d 70, 82 (2d Cir. 2015) (internal quotation marks and citation omitted).

This litigation has been proceeding for several years and has gone through lengthy discovery, and therefore, the potential class members would clearly benefit from the work already begun.  From a manageability perspective, one class action to resolve the straightforward spread of hours issue is clearly preferable to hundreds of individual cases.

The nature of the spread of hours violation also suggests that Defendants' employees may not receive their earned wages should they be forced to proceed individually.  NYLL provides that for every shift or split-shift over ten hours, the worker is entitled to one additional hour of pay at the minimum wage rate.  Given the relatively small return, the Court finds that it is unlikely that the class members would take on the considerable expense of bringing individual lawsuits.  *See Whitehorn v. Wolfgang's Steakhouse, Inc..,* 275 F.R.D. 193, 200 (S.D.N.Y. 2011) ("Courts routinely hold that a class action is superior where . . . the damages suffered are small in relation to the expense and burden of individual litigation…"); *Torres v. Gristede's Operating Corp.,* 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) ( "Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually").  Thus, the putative class members would not receive payments to which they are entitled.  For all the foregoing reasons, the Court finds a class action to be the superior method of resolving the spread of hours claim.[9]

---

[9] The class is easily ascertainable as the spread of hours violations can be found through an analysis of each employees' time records.  *See Flores v. Anjost Corp.,* 284 F.R.D. 112, 123 (S.D.N.Y. 2012) (finding that a class is ascertainable where "[t]he class can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statement").

In sum, Plaintiffs have satisfied the requirements of Rule 23 as to the spread of hours class only.  Unlike the collective, this class shall include store managers who were paid by the hour.

## III.  PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Court now turns to Plaintiffs' motion for partial summary judgment and considers that motion in light of the class certification determination.  The NYLL spread of hours claim is the only Rule 23 class claim and the Court's decision regarding that cause of action applies to the class.  The decision on the remaining claims applies only to the named Plaintiffs and/or FLSA collective.

## A.  Legal Standards

Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Ricci v. DeStefano,* 557 U.S. 557, 586, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't,* 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Dove v. City of New York*, No. 03-CV-5052, 2007 WL 805786, at *4 (E.D.N.Y. Mar. 15, 2007) (to defeat a motion for summary judgment, "the non-moving party must provide this Court with some basis to believe that his version of relevant events is not fanciful."(internal quotation and citations omitted)).

**B. Discussion**

    1.  Unpaid Overtime

Both the FLSA and the NYLL require employers to pay their employers overtime for hours worked in excess of forty per week. 29 U.S.C. §207(a)(1); N.Y. COMP. CODES R. & REGS. tit. 12 § 142-2.2. Employers are tasked with recordkeeping responsibilities under both the FLSA and New York state law. *See* 29 U.S.C. §211(c) (requiring that employers "make, keep and preserve . . . records" of their employees regarding "wages, hours, and other conditions and practices of employment); N.Y. LABOR LAW §661 (employers required to maintain payroll records "showing for each week worked the hours worked, the rate or rates of pay and the basis thereof").

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer

had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d

352, 361 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66

S. Ct. 1187, 90 L.Ed. 1515 (1946)).  An employee may satisfy this burden by producing the

employer's time records.  If the employer's records are inaccurate or inadequate, "an employee

has carried out his burden if he proves that he has in fact performed work for which he was

improperly compensated and if he produces sufficient evidence to show the amount and extent of

that work as a matter of just and reasonable inference."  *Mt. Clemens Pottery,* 328 U.S. at 687.

This is not a high standard, and it can be met by offering "the testimony of a 'representative

sample of employees,'" *Hosking v. New World Mortgage, Inc.,* 570 F. App'x 28, 31 (2d Cir.

2014) (summary order), or through a plaintiff's "estimates based on his own recollection."

*Kuebel,* 643 F.3d at 362.   If the employee is successful, "[t]he burden then shifts to the employer

to come forward with evidence of the precise amount of work performed or with evidence to

negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt.

Clemens Pottery,* 328 U.S.  at 687-88.

    The accuracy of the records maintained by the employers in this case is a matter of

dispute.  Defendants possess the POS sheets reflecting all the hours clocked, and the wage

statements reflecting the hours paid.  Neerja J., who was responsible for payroll, testified that the

company practice was for the store managers to indicate deductions for each employee for breaks

or clocking errors, such as for an employee who forgot to clock in or out for a shift, on that

employee's POS report.  Neerja J. Dep. at 11, 13.  She reviewed those reports for discrepancies,

spoke to the managers if necessary, then entered the revised number of total hours worked into

the payroll system.  *Id.* at 11.  Thus, Defendants argue that the wage statements reflecting the

hours paid are an accurate record of the hours worked.  Plaintiffs challenge the deductions taken

24

by the store managers, arguing that they never took breaks, a claim that Defendants dispute. Alternatively, Plaintiffs argue that the managers could not have made accurate reports. In either event, there is a material issue of fact precluding summary judgment as to the unpaid overtime claim. *See, e.g., Shang Shing Chang v. Wang*, No. 15-CV-4385, 2018 WL 1258801, at *2 (E.D.N.Y. Mar. 12, 2018) (denying summary judgment where there was an issue of fact regarding the accuracy of the employer's records). Plaintiffs' motion for summary judgment on this claim is denied.

### 2. Failure to Provide Wage Statements

The alleged inaccuracy of the wage statements is attributed to the failure to indicate the actual hours worked by Plaintiffs. As such, the claim for failure to provide accurate wage statements is derivative of their claim for unpaid overtime. Since there are material issues of fact on the issue of the overtime payments sufficient to defeat Plaintiffs' motion for summary judgment, the claim regarding wage statements is similarly inappropriate for judgment at this time.

### 3. Failure to Provide Wage Notices

Upon reopening discovery in 2017, Defendants produced Payrate sheets that may satisfy the wage notice requirements. At the conference before this Court held on May 17, 2018, Plaintiffs' counsel disputed the authenticity of the Payrate sheets, but essentially conceded that their existence and production raised a material issue of fact. The motion for summary judgment on this claim is denied.

4.  Spread of Hours Pay

Defendants concede that they did not provide any additional pay if someone worked more than ten hours per work day.  In opposition to the motion for summary judgment on this claim, they present two arguments as to why Plaintiffs are not entitled to spread of hours pay.

First, Defendants state that Plaintiffs have failed to refer to specific time entries showing that they worked in excess of ten hours on any given day.  This contention is belied by the time records submitted which show numerous instances of days where employees worked more than ten hours a day.  *See* Pelton SJ Decl. Exs. 15 & 16; Mehnert Class Cert. Decl., Ex. T.

Defendants also suggest that Plaintiffs Khalid and Saleh are not entitled to spread of hours payments because as a general rule, such payments are not owed where the employees hourly rate is greater than the minimum wage.  *See, e.g., Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086, 2016 WL 2909966, at *7 (E.D.N.Y. Mar. 18, 2016) (referencing the "clear weight of authority in this Circuit, as well as all precedent in this District ruling on the issue" and collecting cases), *adopted by* 2016 WL 2758272 (E.D.N.Y. May 12, 2016).   Plaintiffs rely upon a statutory exception that spread of hours pay is due to "all employees in restaurants . . . regardless of given employee's regular rate of pay."  N.Y. COMP. CODES R. & REGS. tit. 12 § 146-1.6(d).  Defendants counter that the corporate defendants are "fast food establishments," not "restaurants" and thus the exception is inapplicable.   Defendants' conclusory argument is not supported by citation to applicable case law or regulation.

 New York has a specific set of regulations entitled the "Hospitality Industry Wage Order" that sets rates of pay and other conditions for employers in those industries.   N.Y. COMP. CODES R. & REGS. tit. 12, §146 *et seq*.   The term "hospitality industry" by definition includes "any restaurant or hotel."  *Id.* §146-3.1(a).   The next subsection defines "restaurant" as including

"any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto. The term restaurant includes but is not limited to restaurant operations of other types of establishments, restaurant concessions in any establishment and concessions in restaurants." *Id.* § 146-3.1(b).  A "fast food establishment," defined later and separately in the title, has a "primary purpose serving food or drink items," offers "limited service," is part of a chain of thirty or more establishments nationwide, and whose customers "order or select items and pay before eating and such items may be consumed on the premises, taken out, or delivered to the customer's location." *Id.* §146-3.13.  Plainly, the regulations consider fast food establishments to be a type of restaurant.[10]

Any regulation regarding restaurants thus applies to fast food establishments unless the latter is expressly excluded.  Indeed, different sections make a clear distinction between fast food workers and others within the hospitality industry.  For example, fast food workers are entitled to higher minimum wage, *see* N.Y. COMP. CODES R. & REGS. tit. 12 §146-1.2, and are not entitled to a tip credit.  *See id.* §146-1.3(c).  The spread of hours provision applies to all restaurant employees without exception.   As a result, Plaintiffs are entitled to spread of hours pay regardless of their regular rates of pay.  Accordingly, Plaintiffs' motion for summary judgment on the spread of hours claim is granted.

---

[10] Fast food employees are clearly addressed in the Hospitality Industry Wage Order, which by definition covers two broad categories -- restaurants and hotels.  Commonsense dictates that fast food establishments must fall into the restaurant category as they clearly are not hotels.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for class certification is granted as to the spread of hours claim and denied as to the remaining claims.  The certified class will be as follows:

> All hourly employees who, on any day, worked a shift or split-shift in excess of ten (10) hours at any time from October 14, 2009 through the present, for any Dunkin' Donuts or combination Dunkin' Donuts/Baskin Robbins/Nathan's location owned and/or operated by Sanjay Jain and/or Neerja Jain in New York.

Plaintiffs' counsel is hereby appointed class counsel.

Plaintiffs' motion for summary judgment is granted as to the spread of hours claim and denied in all other regards.


**SO ORDERED**.                                        _/s/ Sandra J. Feuerstein_
                                                       Sandra J. Feuerstein
                                                       United States District Judge


Dated:  June 26, 2018
            Central Islip, New York